UNITED STATES, Appellee

v.

BILLY D. EVANS, Private, U. S. Air Force, and EVERETT L. PARKER, Private First Class, U. S. Air Force, Appellants

1 USCMA 541, 4 CMR 133

No. 457

Decided August 8, 1952

Col. Kenneth B. Chase, USAF, and Maj. Abraham S. Robinson, USAF, for Appellants.

Col. Wendell C. Dreier, USAF, and Capt. William E. Shannon, USAF, for Appellee.

## Opinion of the Court

Paul W. Brosman, Judge:

Petitioners, in a joint trial by general court-martial, were convicted of rape, in violation of Article of War 92, 10 USC § 1564.

### I

Evans was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for seven years. Parker was sentenced to dishonorable discharge, total forfeitures, and con-

542

finement at hard labor for three years. The convening authority approved, and a board of review in the office of The Judge Advocate General, United States Air Force, has affirmed the findings and sentences. This Court granted the accused's petition for review, limited to two issues: (1) Whether prejudicial error was committed by the law member in his refusal to grant the accused separate trials. (2) Whether prejudicial error was committed in failing to assign separate defense counsel to each of the accused.

## II

Before turning to these issues, a brief summary of the operative facts is necessary. On the night of the offense, the two accused met the prosecutrix and two male Japanese companions on a suburban Tokyo street. Evans seized the girl and, while Parker held the two men at bay, took her into a nearby house, which was in process of construction, and raped her. When Evans had completed the act both he and Parker left the scene. Parker at no time personally assaulted the girl. Instead he played the supporting role of aider and abettor—but, of course, thereby rendered himself liable to conviction as principal. Manual for Courts-Martial, U. S. Air Force, 1949, paragraph 27. Both were apprehended shortly, and each confessed his part in the crime.

## III

Captain Philip A. Rouse, as defense counsel, and First Lieutenant Jack C. Dixon, Jr., as assistant defense counsel, were appointed to represent both men. At the opening of the trial, defense counsel moved for a severance, pursuant to the provisions of the Manual for Courts-Martial, supra, paragraph 70d, contending that separate trials were necessitated by the "antagonistic defenses" of the appellants. Pressed by the law member to be more specific, he—for all practical purposes—merely reiterated his statement of the "antagonistic defenses" conclusion. At one point he indicated hesitantly that he might wish to call one accused as a

witness in the other's case. However, pressed again, he declined to state that he had any definite intention to do so.

Paragraph 70d, supra, provides for the granting of motions for severance "if good cause is shown" [emphasis supplied], and sets out the presence of antagonistic defenses as one of the frequent grounds for the motion. In his insistence that the defenses of the accused were antagonistic, defense counsel most assuredly *stated* a sound foundation for his motion. However, a wide gulf separates a mere *statement* from a *showing* of good cause. Allen v. United States, No. 11,132, 202 F. 2d 329 (C.A. D.C. Cir.), decided July 18, 1952. The Manual, supra, requires such a showing. Defense counsel failed completely to meet this requirement. It is obvious that the requirement of a *showing* of good cause necessarily demands that the defense open a part of its case for inspection. However, this is the price exacted by military law of those who desire separate trials for their joint criminal excursions. Glasser v. United States, 315 US 60, 86 L ed 680, 62 S Ct 457, to which we will shortly advert in greater detail, is distinguishable on its facts. Actually, too, it was not necessary that disclosure of defenses be made to the personnel of the court in this case. Under the current practice, defense counsel could appropriately have requested an out-of-court hearing on his motion for severance. Manual for Courts-Martial, United States, 1951, Appendix 8, Guide—Trial Procedure, pages 514, 515. This procedure was not recognized under the Manual for Courts-Martial, U. S. Air Force, 1949, because of the law member's identification with the tribunal. However, a practice existed whereby matters of either fact or law could be brought to the attention of the law member by a written memorandum for his eyes only. In fact, the very problem before us now constitutes one in which the mentioned practice was frequently invoked. Defense counsel in this case made no attempt whatever in this direction.

Where, as here, a joint offense is

charged, a joint trial is a customary and proper practice, so ■■■■■ that the present case enjoys no unique distinction. In such a situation separate trial is a privilege, not a right. United States v. Fradkin, 81 F2d 56, 59 (CA2d Cir); United States v. Smith, 112 F2d 83, 85 (CA2d Cir); United States v. Cohen, 124 F2d 164, 165, 166 (CA2d Cir). The burden rests on him who seeks severance to show the risk of prejudice to his defense through joint trial. As a privilege, too, it is a matter resting largely within the discretion of the trial judge—the law member or law officer under court-martial procedure. One asserting error in the exercise of that discretion ■■■■■ must assume the burden of showing, not merely that another course might have been preferable, but that in adopting the course taken there was a clear abuse of discretion. This means that he must convince the reviewing tribunal that the denial of a separate trial was, under all of the circumstances, manifestly improper in that it subjected him to substantial prejudice in the conduct of his individual defense. No such showing was or is now made here. Defense counsel's efforts, as indicated, fell far short of a showing of possible prejudice to the accused through joint trial. At the trial proper neither accused took the stand, nor did either introduce evidence in his own behalf. Granting the superiority of hindsight over foresight, we find it difficult to see either how petitioners were in fact prejudiced by their joint trial, or how, in the situation as presented to the law member at the outset, he could have been expected to perceive a possibility of substantial prejudice. Accordingly, we affirm the board of review's support of his ruling. "A man takes some risk in choosing his associates and, if he is hailed into court with them, must ordinarily rely on the fairness and ability of the jury to separate the sheep from the goats." A. Hand, Judge, in United States v. Fradkin, supra, at page 59.

IV

Petitioners' second assignment of error relates to the failure of the law member to accord each ■■■■■ accused separate defense counsel. In conjunction with his motion for severance, defense counsel expressed the belief that he could not properly represent both accused, and that he desired to represent Evans alone. Parker also expressed objection to having as counsel the officer who defended Evans. Upon further questioning by the law member, however, Parker agreed that he would be satisfied with the same counsel, if the motion for severance was to be denied. When the motion for severance was in fact denied, defense counsel expressly stated that he would prefer to defend both accused, and suggested that separate counsel be not assigned Parker. He said that he felt that the presence of separate counsel could only result in the defense being "considerably garbled."

In the outstanding case on right to counsel, the Supreme Court made it clear that that right is "fundamental and absolute." Glasser v. United States, supra, at page 76. Cf. Snyder v. Massachusetts, 291 US 97, 116, 78 L ed 674, 54 S Ct 330, 90 ALR 575; Tumey v. Ohio, 273 US 510, 535, 71 L ed 749, 47 S Ct 437, 50 ALR 1243; Patton v. United States, 281 US 276, 292, 74 L ed 854, 50 S Ct 253. Waivers are not lightly to be accepted. Johnson v. Zerbst, 304 US 458, 464, 82 L ed 1461, 58 S Ct 1019, 146 ALR 357. As spokesmen in the military area, we state the obvious when we say that all court-martial officials should be alert to protect zealously the right of the accused to counsel. But here the record makes clear that petitioner Parker's demand for separate counsel was deeply enmeshed with the defense motion for separate trials. It was manifestly conditioned on the success of that motion, and, when the motion was denied, Parker willingly acquiesced in his defense by counsel also representing his co-accused, Evans. The law member made it abundantly clear to Parker that separate counsel would be supplied if he so desired. We are con-

vinced that, when the motion for severance was denied, Parker willingly agreed to representation by the counsel then assigned him.

We have been somewhat troubled by the extended colloquy between the law member, on the one hand, and defense counsel and the accused, on the other, and by what is claimed to border on high-handedness in the law member's approach. However, we attribute his challenged attitude rather to downrightness and an intense desire to do—and to accomplish carefully and fully—what he considered his duty. We are not at all constrained to believe that his conduct amounted to judicial duress.

In the Glasser case, supra, the Supreme Court said at page 76, apropos our present inquiry:

".   .   .   Of equal importance with the duty of the court to see that an accused has the assistance of counsel is its duty to refrain from embarassing counsel in the defense of an accused by insisting, or indeed, even suggesting, that counsel undertake to concurrently represent interests which might diverge from those of his first client, *when the possibility of that divergence is brought home to the court.*   .   .   .   [Emphasis supplied].

This language clearly indicates the interrelationship of the right to separate counsel and the right to separate trials. Both may depend on the possibility of a divergence of interest among the accused. No reasonable possibility of such divergence was "brought home to the court" here.

Prior to its determination in the Glasser case that the accused had been denied the right to counsel secured by the Sixth Amendment, the Supreme Court observed that its examination of the record led it to conclude that assigned counsel's representation "was not as effective as it might have been if the appointment had not been made." Glasser v. United States, supra, at page 76. In the record before us there is literally nothing to indicate that the defense of either petitioner was in any degree embarrassed by their representation by the same counsel. We find no error in the fact of petitioner's representation by counsel assigned them jointly.

Accordingly, the decision of the board of review is affirmed.

Chief Judge QUINN concurs.

Under a recently enacted rule of this Court a judge who is not present at oral arguments of the case is not permitted to participate in the decision. Judge Latimer was in the hospital at the time of argument and his views are therefore not expressed.