UNITED STATES, Appellee

v

ALBERT T. SKONBERG, Storekeeper First Class,
U. S. Navy, Appellant

10 USCMA 57, 27 CMR 131

No. 12,015

Decided November 21, 1958

*Lieutenant (jg) Charles D. Hawley* was on the brief for Appellant, Accused.

*Lieutenant Gailen L. Keeling* was on the brief for Appellee, United States.

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused was tried and convicted by general court-martial on specifications alleging larceny, forgery, and fraud against the Government, in violation of Articles 121, 123 and 132, Uniform Code of Military Justice, 10 USC §§ 921, 923 and 932, respectively. The accused entered a plea of not guilty to each specification and Charge. He petitioned this Court alleging that the law officer committed prejudicial error in instructing the court-martial as follows:

"You may find the accused guilty of any offense which you believe beyond a reasonable doubt from the evidence that he has committed. And you should acquit the accused of any offense that you are convinced beyond a reasonable doubt from the evidence that he has not committed. That depends solely upon your determination." [Emphasis supplied.]

In United States v Rowan, 4 USCMA 430, 16 CMR 4, while instructing the court on the defense of mistake of fact, the law officer stated that the accused must establish the mistake of fact beyond a reasonable doubt. This Court held the instruction to be erroneous inasmuch as it shifted to the accused the burden of establishing that he lacked the criminal intent alleged, whereas the Government always bears the burden of establishing the accused's guilt beyond a reasonable doubt. We also held the erroneous instruction was

not cured by the portion of the law officer's charge which correctly stated the legal formula concerning reasonable doubt and burden of proof. We said:

"... [W]hen two instructions are mutually inconsistent we cannot determine which one was accepted by the court-martial, nor can we say with fair assurance that the finding would not have been different had the burden of proof on this question been placed where it belonged."

In United States v Noe, 7 USCMA 408, 22 CMR 198, we stated:

"... The accused having raised this issue, the Government then had the burden to prove beyond a reasonable doubt that his theory was not correct. If it did not he was entitled to a verdict of not guilty. If the trial court found his mistake both honest and reasonable, the accused was entitled to an acquittal. United States v McCluskey, 6 USCMA 545, 20 CMR 261. But under the law officer's instruction in order to acquit, the court was required to believe the defense of the accused beyond a reasonable doubt. This placed on the accused the burden of proof in his defense. It was not necessary for the accused to prove the truth of his contentions beyond a reasonable doubt. It was enough if his testimony raised in the minds of the *court a reasonable doubt*."

In *Noe,* supra, we quoted with approval the following statement made by Judge Miller in McFarland v United States, 174 F2d 538, 539 (CA DC Cir) (1949):

"If a charge to a jury, considered in its entirety, correctly states the law, the incorrectness of one paragraph or one phrase standing alone ordinarily does not constitute reversible error; but it is otherwise if two instructions are in direct conflict and one is clearly prejudicial, for the jury might have followed the erroneous instruction. Nicola v United States, 3 Cir, 1934, 72 F2d 780, 787; Drossos v United States, 8 Cir, 1924, 2 F2d 538, 539."

We also quoted with approval in *Noe,* supra, the Court of Appeals in Smith v United States, 230 F2d 935 (CA 6th Cir) (1956), where they declared:

"... When the court gives inconsistent instructions on a material issue this violates the principle that the instructions must not mislead the jury and therefore must be consistent and harmonious. The fact that one instruction is correct does not cure the error in giving another that is inconsistent with it."

The law places upon the Government the duty to prove the accused guilty beyond a reasonable doubt and there is no burden upon the accused to offer any evidence or to put anything in issue other than the plea of not guilty, which places all material facts in controversy and the burden of proving the case beyond a reasonable doubt remains upon the Government. If the accused is not proved guilty beyond a reasonable doubt of the charge against him, then he should be acquitted. There is never any requirement that the court members be convinced of the accused's innocence beyond a reasonable doubt before they may acquit. Such a requirement is exactly what the instructions in this case would have imposed.

This Court therefore finds that the instructions were erroneous and prejudicial to the material rights of the accused.

The decision of the board of review is reversed. The record of trial is returned to The Judge Advocate General of the Navy for action consistent with this opinion. A rehearing may be ordered.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

It is apparent to me from a reading of the questioned instruction that the error appearing therein could have been caused by either the law officer or the reporter misplacing the word "not." The instruction as given reads, "And you should acquit the accused of any offense that you are convinced beyond a reasonable doubt from the evi-

dence that he has *not* committed."
(Emphasis supplied.) To be correct,
the instruction should read, "And you
should acquit the accused of any of-
fense that you are not convinced beyond
a reasonable doubt from the evidence
that he has committed." Empha-
sis supplied.) However, in situa-
tions such as this, it is necessary to
assume the accuracy of the record and
I, therefore, place responsibility on the
law officer for the error. But, in view
of the other instructions given by him,
I am not willing to find there was any
prejudice to the substantial rights of
this accused. Furthermore, even as-
suming some measurable impact on the
court detrimental to the accused, I con-
clude the error was waived.

The law officer gave extensive and
complete instructions. He commenced
his charge by advising the court that
they were not to single out one instruc-
tion alone but must consider them in
their entirety. Were I to quote each
instruction in which he informed the
court members of their duty not to
find the accused guilty unless they were
convinced of his guilt beyond a rea-
sonable doubt, this opinion would be
a masterpiece of tautology. To avoid
that, I merely state that, when dis-
cussing the elements of the offenses,
the limited effect of certain testimony,
the individual subjects of thefts, the
presumption of innocence, and burden
of proof, the law officer impressed on
the court its duty not to return a find-
ing of guilty on any specification unless
the quantity and quality of the evi-
dence was sufficient to convince them
beyond a reasonable doubt that the
prosecution had proved the accused
guilty. In the light of the many times
the law officer iterated and reiterated
the measuring rod the court must use
to return a finding of guilt, I cannot
believe the court-martial members could
possibly have been misled into believing
the burden was on the accused to prove
his innocence.

The actions of defense attorneys dur-
ing the trial substantiate my belief as
to the impact but, more important,
they form the basis for imposing the
doctrine of waiver. In accordance
with the requirements of good practice,
the law officer prepared a complete set
of written instructions. Before read-
ing them to the court members, he held
an out-of-court conference with coun-
sel, and I quote the record to show the
efforts he made to instruct accurately:

"Gentlemen, I have prepared cer-
tain instructions which I have given
you an opportunity to go over, which
I intend to give to the court. Each
side has submitted a proposed in-
struction to me. I first want to take
up the instructions that I intend to
give.

"For the prosecution, have you had
a chance to go over the instructions
that I intend to give in this case?

"MR. CONAWAY: Yes, sir.

"LAW OFFICER: For the defense,
have you had an opportunity to go
over the instructions?

"MR. MACKRES: We have.

"LAW OFFICER: Do you have any
objections, Mr. Conaway, to the in-
instructions I intend to give?

"MR. CONAWAY: I have no objec-
tions, sir.

"LAW OFFICER: For the defense,
are there any objections to the in-
structions I intend to give?

"MR. MACKRES: The defense has
no objections."

After discussing the proposed in-
structions submitted by counsel, he
concluded the conference by stating:

"LAW OFFICER: Now, when I give
these instructions you might sit
there and think of something else
you want given. I don't want to pre-
clude you from proposing another in-
struction, so after I have given these
instructions you may come to the
table and propose an additional in-
struction, but if you do so I want
counsel to come to the table and pro-
pose an instruction. If you have any
additional objections that come to
your mind during the time I am
giving them, why, I want you to feel
free to come to the law officer's table
and put them on the record.

"MR. RAMSEY: Thank you.

"LAW OFFICER: Also, I want you
to listen to see that I don't make a
mistake in the ones I have written
out here. Sometimes I read them

wrong, leave something out, so watch for those."

At a second out-of-court hearing, he pointedly notified counsel of their responsibility, for he said:

". . . I am seeking help from the counsel in the case, who are officers of the court, to help the law officer."

The accused was represented by appointed defense counsel and a civilian lawyer of his own choice. The latter was a member of the bar of California and admitted to practice in all the courts of that State. It seems obvious to me that when qualified and experienced counsel have been furnished written copies of proposed instructions, afforded an opportunity to study them thoroughly, and are unable to detect an inaccuracy in the language, the error could not be egregious. Most certainly if, after closely scrutinizing an instruction, legally trained members of a bar are unable to detect a misplaced word in one sentence, there is little likelihood that members of the court who have but a fleeting second to hear the words read would be able to do better. Moreover, defense lawyers were present in court when the law officer read the instructions and, even though they had been admonished to listen carefully, they were not mentally conscious of the inaccurracy. To believe the court could have noticed the error is to assume that the members have more discriminating minds than the attorneys. I prefer not to indulge in that presumption.

One of the fundamental purposes of requiring objections to instructions is to avoid errors of this nature being raised for the first time after conviction. To allow defense counsel the luxury of closing their eyes to the writings and their ears to the readings of a law officer and then grant a reversal for their omissions is contrary to the orderly administration of justice. Accordingly, I conclude the doctrine of waiver should govern our disposition.

The instant case then not only is clearly distinguished by its facts from United States v Rowan, 4 USCMA 430, 16 CMR 4, where it was impossible to determine which rule governed the court's deliberations, but moreover we have here the very situation we envisaged there as proper for the application of waiver.

I would affirm the decision of the board of review.