UNITED STATES, Appellee

v

JOHNNIE FEARS, Airman Second Class,
U. S. Air Force, Appellant

11 USCMA 584, 29 CMR 400

585

*Captain Prichard E. Gray* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel James L. Kilgore* and *Lieutenant Colonel Dwight R. Rowland.*

*Major Lawrence J. Gross* argued the cause for Appellee, United States. With him on the brief was *Colonel John F. Hannigan.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Tried in common with one Jones, the accused Fears was convicted by general court-martial for wrongful use of narcotics, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to bad-conduct discharge, total forfeitures, confinement at hard labor for one year, and reduction to the grade of airman basic. Intermediate appellate authorities affirmed, and thereafter accused petitioned this Court. We granted review to consider the propriety of a ruling by the law officer denying Fears' motion for severance and the correctness of certain instructions.

The facts leading to accused's conviction are simple. The Government's evidence established that on the evening in question, Air Force law enforcement personnel accompanied Korean authorities in a raid on the house of a narcotics purveyor, and accused, together with Jones and three other airmen, was apprehended inside. As the agents of the Office of Special Investigations entered the room, they observed accused drop a cigarette to the floor. They retrieved it and subsequent chemical analysis revealed the presence therein of an opium alkaloid. Also seized from the premises in the raid were several other pieces of evidence. They included a syringe and a packet of powder which the Korean dope pusher had in his hand, a spoon and a hypodermic needle which were on the floor, and a can containing about three dozen "decks" of powder. Chemical analysis of the powder seized from the Korean and of four samples of

the packets in the can also disclosed the presence of a habit-forming drug. Some four hours later, and after proper warning, accused voluntarily furnished a urine specimen. The presence of morphine therein was disclosed by chemical analysis, but the test for codein was negative.

Accused took the stand as a witness in his own behalf. He admitted having been present in the house for some ten or fifteen minutes prior to the raid, but explained that he had merely gone there with a friend and was waiting with him to pick up the latter's clean laundry. Accused denied using any narcotics or that he had dropped the cigarette as the OSI agents claimed, and this testimony was corroborated in large part by his friend. Further, accused maintained he had never before been to the house and stated he was unaware heroin was sold there. Neither had he noticed the narcotics paraphernalia until the raid was in progress. He also related that during the twenty-four hour period prior to his apprehension he had taken aureomycin and some sulfa tablets, and had been medicating himself with a cough syrup commonly called "GI gin."

The question on the motion to sever arose in the following fashion. Upon Fears' arraignment at trial, defense counsel sought a separate trial in his behalf. In an out-of-court hearing counsel advanced two arguments: First, that Jones would testify in behalf of Fears, and, second, that the latter's trial at that time would complicate his domestic problems if he were convicted and confined. Defense counsel first predicated his motion upon

a possibility that Jones would testify, but upon inquiry by the law officer he stated he had made a bad choice of words, and that Jones would be a witness for Fears. Trial counsel resisted the motion, contending that no showing justifying a severance had been made, and pointing out that both Fears and Jones were charged with like offenses which occurred at the same time and place and would be established almost entirely by the same evidence. The defense acknowledged the Government had a legitimate stake in common trials in proper cases, but reasserted its request for relief, counsel stating his belief that Fears would be "more adequately protected if his case is severed and tried at a different time on the grounds I have previously stated. I'm not going to belabor this point—I mean I have put my facts in and that's it." Trial counsel answered that a bare statement by the defense that the other man would testify for Fears did not constitute a showing that he would be prejudiced unless the cases were severed. Defense counsel again declined to offer anything further, however, and thereupon the law officer's ruling was announced as follows:

"LO: Well, I will preface my ruling with the statement that, normally, I would be certainly liberal in the granting of this type of motion. However, I feel that the defense has not produced enough at this point to give me a firm basis upon which to predicate a discretionary ruling that the cases be severed.

"DC: So my motion is overruled.

"LO: At this point the motion to sever is denied."

In the early case of United States v Bodenheimer, 2 USCMA 130, 7 CMR 6, in a unanimous opinion ■ authored by the Chief Judge, this Court spelled out limitations on the use of common trials. There, after discussing the provisions of paragraph 33*l*, Manual for Courts-Martial, United States, 1951, and the pertinent Federal Rules of Criminal Procedure upon which that section was based we stated:

". . . This type of trial proce-

dure can be used only where the offenses are closely related, where they are committed at the same time and place, and where they are provable by the same evidence."

Manifestly, then, there was no impropriety in the convening authority's order that accused Fears be tried at a common trial with Jones. The two were charged with and the evidence presented bears out—just as trial counsel argued—that both men wrongfully used dope at the same time and place, and that the two offenses were proved by substantially the same evidence. Cf. United States v Bodenheimer, supra; United States v Alvarez, 10 USCMA 24, 27 CMR 98; United States v Williams, 10 USCMA 33, 27 CMR 107. Under those circumstances, and particularly when, as here, the accused were represented by qualified counsel, the cases were simple and uncomplicated, and at that time there appeared to be no inconsistent defenses or conflicting interests nor any indication that the evidence might tend to confuse or mislead the court, there can be no doubt whatever that it was appropriate to order a common trial.

Thus it is crystal clear that the original order of joinder was proper and if ■ the accused has any just cause for complaint it must be predicated on the law officer's ruling on the motion to sever. However, to support that assignment of error accused must convince us that the law officer abused his discretion in denying the motion. The same issue was previously before us in the early case of United States v Evans, 1 USCMA 541, 4 CMR 133. The facts there are strikingly similar to those presently before us, and although that case was tried under the Elston Act, the Federal authorities cited remain applicable and the provisions of paragraph 70*d*, Manual for Courts-Martial, U. S. Air Force, 1949, to which we there adverted, are the same as those in paragraph 69*d* of the current Manual. The following extract from our opinion in *Evans* is apropos here:

". . . At the opening of the trial, defense counsel moved for a sever-

**587**

ance, pursuant to the provisions of the Manual for Courts-Martial, supra, paragraph 70d, contending that separate trials were necessitated by the 'antagonistic defenses' of the appellants. Pressed by the law member to be more specific, he—for all practical purposes—merely reiterated his statement of the 'antagonistic defenses' conclusion. At one point he indicated hesitantly that he might wish to call one accused as a witness in the other's case. However, pressed again, he declined to state that he had any definite intention to do so.

"Paragraph 70d, supra, provides for the granting of motions for severance *'if good cause is shown'* [emphasis supplied], and sets out the presence of antagonistic defenses as one of the frequent grounds for the motion. In his insistence that the defenses of the accused were antagonistic, defense counsel most assuredly *stated* a sound foundation for his motion. However, a wide gulf separates a mere *statement* from a *showing* of good cause. Allen v United States, No. 11,132, 202 F2d 329 (CA DC Cir), decided July 18, 1952. The Manual, supra, requires such a showing. Defense counsel failed completely to meet this requirement. It is obvious that the requirement of a *showing* of good cause necessarily demands that the defense open a part of its case for inspection. However, this is the price exacted by military law of those who desire separate trials for their joint criminal excursions. Glasser v United States, 315 US 60, 86 L ed 680, 62 S Ct 457, to which we will shortly advert in greater detail, is distinguishable on its facts. Actually, too, it was not necessary that disclosure of defenses be made to the personnel of the court in this case. Under the current practice, defense counsel could appropriately have requested an out-of-court hearing on his motion for severance. . . .

"Where, as here, a joint offense is charged, a joint trial is a customary and proper practice, so that the pres-

ent case enjoys no unique distinction. In such a situation separate trial is a privilege, not a right. United States v Fradkin, 81 F2d 56, 59 (CA 2d Cir); United States v Smith, 112 F2d 83, 85 (CA 2d Cir); United States v Cohen, 124 F2d 164, 165, 166 (CA 2d Cir). The burden rests on him who seeks severance to show the risk of prejudice to his defense through joint trial. As a privilege, too, it is a matter resting largely within the discretion of the trial judge—the law member or law officer under court-martial procedure. One asserting error in the exercise of that discretion must assume the burden of showing, not merely that another course might have been preferable, but that in adopting the course taken there was a clear abuse of discretion. This means that he must convince the reviewing tribunal that the denial of a separate trial was, under all of the circumstances, manifestly improper in that it subjected him to substantial prejudice in the conduct of his individual defense. No such showing was or is now made here."

True it is that the *Evans* case involved a joint trial, whereas we are concerned in the instant situation with a trial in common. We recognize, as paragraph 69*d*, Manual for Courts-Martial, United States, 1951, states, that a motion for severance at a common trial should be liberally considered and that an accused whose case is to be tried in that manner need not present so cogent a reason to be tried separately as an accused in a joint trial. Nevertheless, the underlying rules are the same in both instances, and good cause must be shown if the accused in a common trial seeks to have a valid order of joinder modified.

Accordingly, we may appropriately apply the rationale of *Evans* in the case at bar, and when that is done we are constrained to rule adversely to the appellant, Fears. Defense counsel's second stated reason for the motion to sever had no legal merit by itself, but would be of consequence only in determining

which accused should be tried at that time if the cases were severed. Thus, the defense must rely on the other ground for his motion, and although counsel asserted a possible basis for separate trial, it is clear beyond peradventure that he failed to make the necessary factual showing. Even though the burden of so doing was specifically brought to his attention, defense counsel declined to offer anything beyond a bare statement in support of the motion. His assertion that Jones would testify is no more than a representation that he would become a witness but it does not furnish the law officer with the nature of the testimony, or its competency, relevancy, or materiality to the issues. Furthermore, no fact or circumstance was suggested as to why the accused Jones would feel free to testify in a separate proceeding but hampered in a common trial. And although the law officer's ruling obviously left the door open for the motion to be reasserted later, if other matters came to light, the defense presented nothing more and did not renew the motion. Certainly, then, we have been presented with no facts which would justify a holding that the law officer abused his discretion in refusing to grant relief. United States v Evans, supra; United States v Borner, 3 USCMA 306, 12 CMR 62. We might add, parenthetically, that not only was the law officer's ruling within proper limits, but in our review of the record we have found no prejudice to accused by reason of his common trial, nor has any reasonable possibility thereof been pointed out by the defense.

We turn next to the instructional issues. After charging the court members on the elements of the offense, the law officer continued as follows:

"The court is advised that the use of a habit forming narcotic drug may be found to be wrongful unless the contrary appears. A person's use of a drug is not wrongful when the drug has been duly prescribed for him by a physician and the prescription has not been obtained by fraud or when the use is the result of accident or mistake.

"There has been evidence in this case that on or about the date contained in the specification of the charge, the accused Fears was taking for allegedly medicinal purposes a cough syrup containing codeine, popularly known as GI gin. In order to convict the accused Fears, you must be satisfied beyond a reasonable doubt that he wrongfully consumed narcotic drugs on or about 20 May 1959. Consequently, if you find that Fears did in fact consume such cough syrup and that such consumption caused the narcotics allegedly found present in his urine at the time he voided for purposes of the analysis on 20 May 1959, then you must acquit Fears, for such use would not be wrongful."

One of the complaints asserted on appeal is that the instructions in the first quoted paragraph ▆▆▆▆ ▆ overturn the presumption of innocence and improperly shift the burden of proof to the accused. The short answer to that contention is that similar arguments have been pressed upon us before, but rejected. See United States v Crawford, 6 USCMA 517, 20 CMR 233, and cases therein cited. See also Yee Hem v United States, 268 US 178, 69 L ed 904, 45 S Ct 470 (1925); Morrison v California, 291 US 82, 88, 78 L ed 664, 54 S Ct 281 (1934); United States v Fleischman, 339 US 349, 363, 94 L ed 906, 70 S Ct 739 (1950); United States v Gohagen, 2 USCMA 175, 7 CMR 51.

With regard to the second paragraph quoted hereinabove, appellate defense counsel urge that the law ▆▆▆▆ ▆ officer required accused to prove his defense in that the members of the court-martial were improperly informed that in order to acquit him, they must not only find in fact that accused drank the cough syrup, but that consumption of the medicine caused the presence of the narcotics allegedly found in his system. First, we point out that the defense approach tears portions of the charge out of context. It is to be noted that the law officer was not instructing on mistake of fact—as the defense erro-

neously asserts—but rather on the element of wrongfulness, *i.e.*, lack of knowledge of wrongdoing. And although the wording of the phrase assailed by the defense could be improved upon, still, when the instruction is interpreted reasonably, it is apparent that it sets up one theory advanced by the defense and in substance requires the court to find the accused not guilty if the "GI gin" was the source of the drug. Moreover, the record reflects that the law officer held an out-of-court hearing prior to instructing the court, and inquired if the defense desired "an instruction on the cough syrup." After receiving an affirmative response, he noted that such a charge must include the fact that the burden of proof beyond reasonable doubt is on the Government and that he must be cautious not to shift the standard of proof in this area, and requested defense counsel to draft an instruction. And when considered by its four corners the instruction conveys the principles discussed. Thus, there are strong reasons to believe the charge was the handicraft of the defense, see United States v Jones, 7 USCMA 623, 23 CMR 87, and United States v Crigler, 10 USCMA 263, 27 CMR 337, although it must be conceded we cannot be absolutely certain from this record that such was the case. But at the very least defense counsel participated in preparation of the instruction, was apprised of the wording that would be used, and thereafter, upon inquiry, expressly declined to object or to request additional instructions. From all of the foregoing it should be clear he was satisfied the charge was appropriate and would not mislead the court-martial to the detriment of the accused. See United States v Johnson, 3 USCMA 447, 13 CMR 3; United States v Richards, 10 USCMA 475, 28 CMR 41.

But assuming for the purpose of argument that the instruction is legally inaccurate, it is of no consequence in the case at bar, for the law is clear that unless an issue is raised reasonably by the evidence, no instruction is necessary thereon, nor is an erroneous charge prejudicial to an accused. See

**590**

United States v Grover, 10 USCMA 91, 27 CMR 165.

Beyond cavil, such is the case here. Accused claimed he had been treating a cough with an antibiotic, sulfa, and "GI gin." Uncontroverted evidence was introduced, however, that neither the aureomycin nor the sulfa could be responsible for morphine in the system. As for the cough syrup popularly referred to as "GI gin," the evidence showed it to be elixir terpin hydrate which contains codein. However, the unrebutted expert testimony was that if codein is taken into the body, a urinalysis conducted by the methods herein employed might test either positive for both codein and morphine, or positive for codein and negative for morphine, but would not test negative for codein and positive for morphine. Since analysis of the accused's urine specimen revealed the presence of morphine but tested negative for codein, there is no possibility that the narcotic in his system resulted from consumption of the cough medicine. Accordingly, based upon our assumption that the last quoted instruction was erroneous, and pretermitting the distinct probability that it was self-induced by the defense, nevertheless we must resolve this issue against accused, for the evidence of record raises no issue requiring the instruction.

For the foregoing reasons, the decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

I find myself totally in disagreement with the many reasons that the author of the principal opinion cites to support his conclusion there was no instructional error in this case and that a common trial was permissible over the accused's objection and showing of good cause for a severance. To the contrary, I believe an examination of the record and the applicable law will demonstrate that every brick used to support the ultimate affirmance of this case is quite without straw. Indeed, the very num-

ber of arguments advanced to support the validity of the law officer's advice indicates the strain which we place upon basis legal principles in order to sustain the findings of guilty. If the record raises no issue requiring the instruction in question, why is it necessary to rule upon its validity? Or, if, as is also contended, the instruction is correct, why should the question whether the issue is raised be discussed? These inquiries are, of course, rhetorical, and I submit that the real basis for upholding the decision of the board of review is no more than a disbelief of accused's innocence.

Fears and Jones were tried in common for wrongful use of narcotics, in violation of Uniform Code of Military Justice, Article 134, 10 USC § 934. Fears, whose case is now before us, was sentenced to bad-conduct discharge, total forfeitures, confinement at hard labor for one year, and reduction to the grade of basic airman. Intermediate appellate authorities affirmed, and we granted his petition for review on the issues whether the law officer correctly denied his motion for severance and whether the above-discussed instructions were proper. Jones did not appeal.

On May 20, 1959, criminal investigators and Korean police raided a native residence in Jisan-Ri, Korea. The accused Fears and Jones were apprehended along with other military personnel. A quantity of narcotics and various equipment designed to facilitate its use were discovered on the premises. Accused was observed by an agent of the Office of Special Investigations to drop a cigarette butt on the floor. Analysis of the cigarette "revealed the presence of an opium alkaloid but the amount found was too small for further examination." Examination of a sample of Fears' urine also resulted in a positive reaction for the presence of morphine and a negative reaction for the presence of codeine.

The accused Fears elected to testify in his own behalf. He declared that he visited the Korean home at which he was apprehended on the evening of May 20th. His sole purpose was to accompany Airman Frank while the latter delivered his laundry. While there, he did not use any narcotics, nor did he drop a cigarette butt on the floor. He attributed the presence of morphine in his urine to the earlier use of a cough medicine commonly known as "GI gin" and more properly identified as "elixir of terpin hydrate with codeine." His testimony was corroborated by that of Airman Frank, who also stated that accused used no narcotics at the Korean's house and was, in fact, arguing with him over Frank's failure to share the cost of the taxi which they had ridden there. Frank and the accused intended to proceed from the house to a teahouse in order to eat as soon as his laundry had been properly handled.

Stipulated testimony of expert witnesses for the prosecution indicated that chemical tests for the presence of morphine in the body, if that substance is derived from use of codeine, would always be positive for morphine and positive for codeine or negative for morphine and positive for codeine, but not positive for morphine and negative for codeine. Dr. Williamson, the sole Government expert who actually appeared at the trial, reached a different conclusion. He pointed out that whether the test was positive for morphine and negative for codeine depended upon other factors:

"TC: (Interjecting): Positive for morphine and positive for codeine but never positive for morphine and negative for codeine.

"DC: (To witness): Is that correct, absolutely, in all cases?
"A This, of course would assume which test you are using—if you have had a test of similar sensitivity for both drugs, you'd have to get a test of positive for codeine before you would positive for morphine.

"Q You could get a different result?
"A That would depend on the sensitivity of the test.

"Q You could use any type of sensitivity you want?

"A That's right.

. . . . .

"Q All right, in your opinion is it possible by chemical analysis to distinguish between codeine and heroin?

"A This is possible but I don't know the technique or anything; I have read this in my pharmacology books.

"Q In other words, if you had a chemical analysis which read negative for codeine but positive for mor .. heroin, do you believe this would be credible?

"A I don't know for sure, sir; but I believe it would."

## I

At the outset of the trial, the defense counsel, who represented both Fears and Jones, moved for a severance on behalf of the former. In order that there may be no argument concerning the certainty or the basis for his motion, I set out the pertinent portion of the record:

"DC: For purposes of the record in this out-of-court hearing, I will again move that the case of the United States against Johnnie Fears be severed and tried in a separate action on these grounds: (1) The possibility exists that the other accused will in fact be a witness for Airman Second Class Fears, and I feel that it would be more proper in that case to try Fears on a separate action. That is the primary basis. (2) (And he will be a witness on the merits of the case—Fears—put that in.) (2) Fears has domestic problems at this time which concern his wife in the States. He is working with the Red Cross to settle these problems. If he is convicted today and confined, it will be a great burden and hardship on him to take care of this family business, and this is the basis for my motion.

"LO: Before I ask the government to make reply if it desires to do so, I have a couple questions to clarify your grounds for motion, Captain Tolle. *First (1), you say the 'pos-*

*sibility exists'—that's what I heard you say.*

"DC: *Bad choice of words.*

"LO: You're making this motion on behalf of Airman Fears, *and the possibility* . . .

"DC: *Right.*

"LO: . . . *and the possibility exists that Airman Jones may testify.*

"DC: *Right.*

"LO: Of course this is one of the situations wherein grounds for severance—in which a motion for severance is granted at the discretion of the proper authority, *but I feel that a mere possibility* . . .

"DC: *That was a bad word to use. Jones will testify* . . .

"LO: . . . *will testify for Fears, is that right?—Jones?*

"DC: *Right. That will occur and has to do with what occurred on the 20th of May.*

"LO: What is the government's reply?

"TC: As to the issue of testifying on behalf of one, that certainly can be done in court today. If Jones desires to take the stand and testify today on behalf of Fears, he certainly can do so in the proceedings which we have today.

"DC: He can do so; it would be prejudicial to his rights because as a law officer and having had trial experience, you can well imagine the effect it would have on the court for one accused to testify for the other. *He would in effect be condemning himself.*

. . . . .

"LO: Well, I will preface my ruling with the statement that, normally, I would be certainly liberal in the granting of this type of motion. However, I feel that the defense has not produced enough at this point to give me a firm basis upon which to predicate a discretionary ruling that the cases be severed.

"DC: So my motion is overruled.

"LO: At this point the motion to sever is denied." [Emphasis supplied.]

The foregoing extract makes it crystal clear the defense counsel asserted unequivocally that he desired to call his client Jones on behalf of his client Fears; that Jones would testify about the events of the alleged date of the offense; and that if Jones so testified in a common trial, he would necessarily condemn himself. Surely, these facts are enough to put any military judge on notice concerning counsel's desires and if further information were necessary, to thrust upon the law officer the burden of requesting it. Thus, it is immediately apparent that we are not faced with the situation present in United States v Evans, 1 USCMA 541, 4 CMR 133, where defense counsel "indicated hesitantly that he might wish to call one accused as a witness in the other's case . . . [and] declined to state that he had any definite intention to do so." United States v Evans, supra, at page 543. Moreover, it is of utmost importance to note that the *Evans* case involved a *joint* trial whereas the case before us was tried in *common*. As was there noted by the late Judge Brosman, "Where, as here, a joint offense is charged, a joint trial is a customary and proper practice, . . . In such a situation separate trial is a privilege, not a right." United States v Evans, supra, at pages 543–544.

Of the distinction between motions to sever in joint and common trials, paragraph 69*d* of the Manual for Courts-Martial, United States, 1951, makes the following comments at page 106:

"*d*. Motion to sever.—A motion to sever is a motion by one of two or more co-accused to be tried separately from the other or others. Occasion for the motion may arise in either a joint or a common trial.

"*In a common trial a motion to sever will be liberally considered.* . . .

"The motion should be granted in any case if good cause is shown; but when the essence of the offense is a combination between—the parties—conspiracy, for instance —the court may properly be more exacting than in other cases as to whether the facts established in support of the motion constitute good cause. The more common grounds for this motion are that *the mover desires to use at his trial the testimony of one or more of his co-accused,* or the testimony of the wife of one, or that a defense of the other accused is antagonistic to his own, or that evidence as to the other accused will in some manner prejudice his defense." [Emphasis supplied.]

In United States v Bodenheimer, 2 USCMA 130, 7 CMR 6, a unanimous Court pointed out that the military common trial procedure was based upon Federal practice. See also Rules 8, 13, and 14, Federal Rules of Criminal Procedure. The basis for the combination of defendants in one proceeding is no more than one of convenience to the Government. The measuring of judicial discretion in overruling a motion for severance in a common trial involves the measuring of that convenience against the right of the accused to a fair trial. Cataneo v United States, 167 F2d 820 (CA 4th Cir) (1948). Thus, the consolidation of charges must not place him under "any undue handicap in the matter of his own proof." Haakinson v United States, 238 F2d 775, at page 782 (CA 8th Cir) (1956). Indeed, the Supreme Court has demanded respect for the right of a defendant "not to be tried *en masse* for the conglomeration of distinct and separate offenses committed by others." Kotteakos v United States, 328 US 750, 775, 90 L ed 1557, 1572, 66 S Ct 1239, 1253 (1946).

The facts presented to the law officer show beyond cavil that the common trial deprived Fears of a fair hearing. Defense counsel advised that he desired definitely to summon Jones as a witness on behalf of Fears. The subject matter of Jones' testimony would deal with Fears' participation in the events allegedly occurring on May

**593**

20. Reference to the charges and specifications then before him should have made it clear to the law officer that such testimony would have been relevant and material to Fears' defense. Defense counsel did not leave the matter there, however, for he also brought to the attention of the law officer the fact that, for Jones so to testify in Fears' case would necessarily result in self-condemnation, as he would thereby open himself fully to cross-examination by the prosecution on the subject of his own guilt. The import of the showing made in the out-of-court hearing is simply that counsel was caught, because of the common proceedings, in a cross-fire of conflict between his duty to guard Jones' interests fully and, at the same time, also to represent Fears, to whose case Jones' testimony was essential.

The case against Jones consisted chiefly of his confession, the voluntary nature of which was attacked by defense counsel. After raising that issue, counsel, consistent with his ethical responsibilities, could hardly have called Jones to the stand as Fears' witness without substantial risk to his entire case for the former defendant. See United States v Trojanowski, 5 USCMA 305, 17 CMR 305. When he failed, however, to call Jones, he thereby deprived Fears of evidence cogent to that accused's defense. The result is that counsel's dual representation in a common trial of both defendants inevitably caused the sacrifice of one client or the other. He made the probability of this conflict plainly apparent to the law officer and, in my opinion, Fears was accordingly entitled to a severance.

The principal opinion attempts to resolve the issue regarding the severance by reference to the rationale of this Court in United States v Evans, supra. As I have heretofore pointed out, that decision involved a *joint* trial of *joint* charges, a situation in which the law officer has a broad discretion to refuse severance. In common trials, his discretion is considerably narrowed, Manual, supra, page 106, and it is by this standard, rather than the doctrine espoused in *Evans*, supra, that we

should measure the propriety of his ruling in this case. Otherwise, we are effectively ignoring the difference between the privilege to consolidate hearings for the mere convenience of the Government, as opposed to its right normally to try joint offenders in one trial. Moreover, it overlooks the impossible situation in which the failure to grant a severance placed defense counsel. Of similar facts, the Supreme Court, stated in Glasser v United States, 315 US 60, 86 L ed 680, 62 S Ct 457 (1942), at page 76:

". . . Of equal importance with the duty of the court to see that an accused has the assistance of counsel is its duty to refrain from embarrassing counsel in the defense of an accused by insisting, or indeed, even suggesting that counsel undertake to concurrently represent interests which might diverge from those of his first client, when the possibility of that divergence is brought home to the court."

Here, the possibility of conflict was made known to the law officer in unmistakable terms. Counsel's subsequent failure to call Jones as a witness illustrates the dilemma in which he was placed by the common trial. I would therefore reverse the decision of the board of review on this ground alone.

II

Passing to the second issue before us, we are confronted with the question of the sufficiency of the law officer's instructions on the issue of the wrongfulness of accused's use of narcotics, as related to the results of the chemical analysis of his urine. That instruction stated:

"The court is advised that the use of a habit forming narcotic drug may be found to be wrongful unless the contrary appears. A person's use of a drug is not wrongful when the drug has been duly prescribed for him by a physician and the prescription has not been obtained by fraud or when the use is the result of accident or mistake.

"There has been evidence in this

case that on or about the date contained in the specification of the charge, the accused Fears was taking for allegedly medicinal purposes a cough syrup containing codeine, popularly known as GI gin. In order to convict the accused Fears, you must be satisfied beyond a reasonable doubt that he wrongfully consumed narcotic drugs on or about 20 May 1959. Consequently, *if you find that Fears did in fact consume such cough syrup and that such consumption caused the narcotics allegedly found present in his urine at the time he voided for purposes of the analysis on 20 May 1959, then you must acquit Fears, for such use would not be wrongful.*" [Emphasis supplied.]

The real vice which I find in the foregoing advice is contained in the italicized phrasing. It requires the court members affirmatively to find that accused consumed cough medicine and that the narcotics in his body resulted from such consumption in order to entitle him to an acquittal. In my view, that instruction is patently incorrect, for all an accused need do is to raise, in the minds of the members, a reasonable doubt concerning whether he wrongfully used narcotics. United States v Rowan, 4 USCMA 430, 16 CMR 4; United States v Noe, 7 USCMA 408, 22 CMR 198; United States v Mallow, 7 USCMA 116, 21 CMR 242; United States v Skonberg, 10 USCMA 57, 27 CMR 131. Nevertheless, for manifold reasons, my brothers conclude there is no prejudicial error involved in the matter. I am in agreement with none of their postulates.

At the outset, much is made of the fact that the instructions, as a whole, conveyed to the court-martial the impression that defense need raise only a reasonable doubt with respect to his use of narcotics. I find no such specific injunction in the law officer's advice and, indeed, the only reference to the controversy is involved in the instruction which must be condemned. Under such circumstances, I suggest that the most which can be said is that the law officer rightly instructed the court, at one point, that guilt must be established beyond a reasonable doubt but elsewhere erroneously placed the burden upon the accused to establish the source of the morphine as "GI gin." Two such inconsistent instructions require reversal. United States v Noe, supra; United States v Skonberg, supra.

Secondly, the principal opinion makes much of the fact that, in an out-of-court hearing, the law officer mentioned the danger of shifting the burden of proof in instructions of this type and asked for defense assistance in drafting an appropriate advice. As the author notes, one cannot at all be certain that the instruction which resulted was the product of the accused's counsel, for the record reflects only that the parties busied themselves in writing instructions. For ought we know, defense counsel drafted an appropriately worded instruction which was silently rejected by the law officer. In other words, we do no more here than speculate concerning the origin of the erroneous advice that is hardly a proper basis for the implication that the error, if any, was self-induced.

Finally, the chief ground for rejecting the accused's well-supported claim of prejudicial error is set forth. It is the contention that the record contains no evidence which reasonably raises an issue concerning the origin of the narcotics in accused's urine. The principal support for this argument is the stipulated testimony of the expert witnesses to the effect that analysis of urine would disclose the presence of codeine as well as morphine if accused had, in fact, used elixir of terpin hydrate. This, however, flatly overlooks the contrary testimony of Dr. Williamson, set forth supra, to the effect that such an unequivocal statement could not be made and that much depended upon the sensitivity of the tests involved. Moreover, it ignores accused's flat denial of conscious use of narcotics, supported by the testimony of Airman Frank, and his not incredible declaration that he could only suppose that the narcotics came from the cough syrup. The majority opinion's reasoning might do very well as a reason for the members of the court-martial to reject accused's

story, but it hardly serves as a basis for our exercise of similar fact-finding powers. To the contrary, I suggest that accused's apparently credible testimony, supported by other evidence in the case, is sufficient to raise an issue requiring proper instructions. As they were not given, it is apparent that he was thereby harmed. Accordingly, I would also reverse on the second issue before us.

I would reverse the decision of the board of review and order a rehearing.