**UNITED STATES**

v.

**Jesse C. YANDLE, 594 28 1932, Private (E–1), U.S. Marine Corps.**

**NMCM 90 3376.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 2 July 1990.

Decided 7 Feb. 1992.

LT Ruth Medeiros, JAGC, USNR, Appellate Defense Counsel.

LCDR Lawrence W. Muschamp, JAGC, USN, Appellate Government Counsel.

Richard J. Dove, Civilian Defense Counsel.

Before WILLEVER and ORR, JJ., and STRICKLAND, Senior Judge.

STRICKLAND, Senior Judge:

Contrary to his pleas, appellant was convicted of conspiracy to commit robbery, robbery,[1] and communicating a threat in violation of Articles 81, 122, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 922, and 934 respectively. He was sentenced by a court composed of officer and enlisted members to a dishonorable discharge, confinement for three years, and forfeiture of all pay and allowances. The convening authority approved the sentence as adjudged.

Appellant raises six assignments of error on appeal.[2] Our resolution of this case requires that we address only two of these. In this case we conclude that the military judge erred in failing to give an instruction on voluntary intoxication as to the specific intent offenses of conspiracy to commit robbery and robbery. We further conclude that the Government proved appellant's guilt beyond a reasonable doubt as to the offense of communicating a threat. The case will be remanded to the convening authority for further action.

The incidents giving rise to the charges occurred when appellant and two other Marines encountered a fourth Marine, the ultimate victim, in a local bar in Okinawa. The victim was obviously drunk[3] and was acting in a manner the other three perceived to be obnoxious. Appellant and his two friends had also been drinking for an extended period of time and were consuming a substance known as "Mojo", a concoction containing a mixture of bourbon, scotch, vodka, gin, rum, tequila, and Kool Aid. Ultimately, after the bar in which they were drinking closed, all four Marines ended up in an alley close to the bar where appellant and his two friends viciously beat the victim and took the victim's wallet and leather jacket. Several months later, while this incident was still under investigation, appellant directed a threat against an employee of the bar in which everyone was drinking. He threatened to finish off this employee and burn down the bar if she identified him as a perpetrator in this matter.

■ Appellant asserts that sufficient evidence was raised at trial concerning his degree of intoxication such that the members were entitled to determine whether it may have affected his ability to form the necessary specific intent required to commit the offenses of conspiracy and robbery. Thus, he argues, it was incumbent on the military judge to instruct the members on the defense of voluntary intoxication. The Government contends that mere intoxication is not sufficient to require an instruction and that any intoxication of appellant had to be to the degree that it impaired his mental faculties to the point where he could not form the necessary specific intent. Alternatively, the Government argues that it was simply a defense tactic to not raise intoxication as a defense so as to exclude the possibility of the Government introducing damaging evidence of appellant's possible involvement in other robberies, evidence which it contends could not have been admitted unless this defense was raised.

The military judge is required to instruct on any special defense in issue. Rule For Courts–Martial (R.C.M.) 920(e)(3), Manual for Courts–Martial (MCM), United States, 1984. A defense "includes any special de-

1. Appellant pled not guilty to robbery but guilty to the lesser included offense of assault consummated by a battery in violation of Article 128, UCMJ, 10 U.S.C. § 928.

2. I. THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THE OFFENSE OF CONSPIRACY TO COMMIT ROBBERY.
II. THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THE OFFENSE OF ROBBERY.
III. THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT

THE OFFENSE OF COMMUNICATING A THREAT.
IV. THE MILITARY JUDGE FAILED TO PROPERLY INSTRUCT ON VOLUNTARY INTOXICATION AS A DEFENSE TO ALL SPECIFIC INTENT OFFENSES.
V. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
VI. APPELLANT'S SENTENCE SHOULD BE REASSESSED.

3. The victim's blood alcohol level on the morning following the incident was still .265.

fense which, although not denying that the accused committed the objective acts constituting the offense charged, denies, wholly or partially, criminal responsibility for those acts." R.C.M. 916(a). A special defense is also called an "affirmative defense." R.C.M. 916 *Discussion.*

Rule 916 specifically sets forth numerous special or affirmative defenses but voluntary intoxication is not among those listed. In fact, R.C.M. 916(*l*) provides:

(1) *Not defenses generally.*

. . . .

(2) *Voluntary Intoxication.* Voluntary intoxication, whether caused by alcohol or drugs, is not a defense. However, evidence of any degree of voluntary intoxication may be introduced for the purpose of raising a reasonable doubt as to the existence of actual knowledge, specific intent, willfulness, or a premeditated design to kill, if actual knowledge, specific intent, willfulness, or premeditated design to kill is an element of the offense.[4]

Despite this language, from which one might conclude that voluntary intoxication is treated differently than a special defense, military courts have nonetheless afforded voluntary intoxication the same status as delineated special or affirmative defenses in relation to the duty of the military judge to instruct the members. In *United States v. Miller,* 2 U.S.C.M.A. 194, 7 C.M.R. 70 (1953), the issue of appellant's level of intoxication as it related to his possessing the requisite knowledge of the status of a superior officer was raised. The Court of Military Appeals stated:

[W]here affirmative defenses of this character are so closely related to the elements of the offense or offenses charged, and are fairly raised by the evidence, the law officer is under an independent duty to give necessary and appropriate instructions, and a defense fail-

ure to request will not be held to constitute waiver.

*Miller,* 7 C.M.R. at 71, 72.

A similar result was reached when the Army Court of Military Review held that it was prejudicial error for the military judge to fail to instruct vis-a-vis intoxication where the evidence reasonably raised the possibility that intoxication was of the extent to likely affect the accused's ability to entertain the necessary specific intent. *United States v. Garcia,* 38 C.M.R. 638 (A.C.M.R.1969), *pet. denied,* 41 C.M.R. 638 (1969). Although not finding sufficient evidence to require the instruction, the Court of Military Appeals recently reaffirmed this principle in *United States v. Watford,* 32 M.J. 176 (C.M.A.1991). If an affirmative defense has been reasonably raised at trial, the *sua sponte* duty of the military judge to instruct the fact finders on the defense is unrelated to whether the defense counsel has requested such an instruction, *United States v. Steinruck,* 11 M.J. 322 (C.M.A.1981), or to whatever theory the defense advances at trial. *United States v. Taylor,* 26 M.J. 127 (C.M.A.1988).

Mere intoxication is insufficient to raise the defense; rather, the intoxication must be to such a degree that the accused's mental faculties are so impaired that a specific intent cannot be formed. *United States v. Parrish,* 20 M.J. 665 (N.M.C.M.R. 1985). The defense is reasonably raised when the record contains some evidence to which the members can attach credence. *Watford,* 32 M.J. at 178. Any doubt as to whether the evidence raises a defense should be resolved in favor of the accused. *Steinruck,* 11 M.J. at 324.

Applying these principles to the case at bar, we find that the defense counsel's failure to object to the omission of an instruction on voluntary intoxication by the military judge did not constitute waiver.[5]

---

4. This subsection is based on paragraph 216h, MCM, United States, 1969 (Rev.), which in turn was based on paragraph 154a(2), MCM, United States, 1951. There are essentially no substantive changes in these different versions although the 1951 and 1969 Manuals refer to voluntary intoxication as not being an "excuse" as opposed to not being a "defense."

5. The issue of the appropriateness of such an instruction was raised by the military judge in the context of whether it was a defense tactic to raise the defense of voluntary intoxication and, upon being assured this was not the defense's position, concluded without objection that the defense was not raised. Record at 111.

We reject the Government's argument that the instruction was properly omitted because of "tactical reasons." This is contrary to the law, *see Taylor*, and is not even a logical argument given the state of the case at the time instructions were being considered.[6] Consequently, the military judge's duty to instruct was unaffected by whatever theory of defense was being propounded by appellant.

■ What remains to be determined is whether the issue of voluntary intoxication was reasonably raised by the evidence. Before addressing this issue, however, we note that the military judge erroneously instructed the members irrespective of the state of the evidence on this issue. The military judge instructed, *inter alia*, as follows: "Members, there has been some question of intoxication raised in this case. I would state as a matter of law that voluntary intoxication in this case is not a defense to the offenses that have been alleged." Record at 130. The Government concedes and we hold that this was a misstatement of the law and was error.[7] If we were to find that the defense of voluntary intoxication was not reasonably raised by the evidence, we would test this error for prejudice. That will not be necessary.

The issue of intoxication was first raised by the Government's own witness, Lance Corporal Hecox, a co-actor to whom the convening authority granted testimonial immunity.[8] The following colloquies occurred during his testimony.

Q. What time did you all arrive at the club?

A. About 9:00.

Q. Were the three of you drinking?

A. Yes.

Q. What were you drinking?

A. We drank about five bottles of Mojo.

\* \* \* \* \* \*

Q. That night you were staggering drunk, were you not?

A. Yes.

Q. You had been drinking. You had five pitchers of Mojo?

A. Yes.

Q. In Mojo, don't you have—there is bourbon, scotch, vodka, gin, rum, and tequila?

A. Yes.

Record at 59–71.

The appellant also told of his own state of intoxication in the following colloquy.

Q. When the bar closed, you left; is that correct?

A. Yes, sir.

Q. That was about 2:00?

A. About 2:00 in the morning.

Q. 2:00 in the morning. And then you had been right there drinking the Mo-

---

6. As pointed out by appellant during oral argument, both Government and defense had rested their cases on the merits and all the evidence was already before the members. Simply requesting an instruction would not have "opened the door" for the Government to introduce any further evidence against appellant.

7. Voluntary intoxication was a potential defense to two of the three offenses. Had the military judge determined that the defense was not raised, an instruction would have been appropriate similar to the following. "I have determined as a matter of law that the defense of voluntary intoxication was not reasonably raised by the evidence in this case. Accordingly, you will not consider the accused's level of intoxication for any purpose in determining his guilt or innocence of any of these offenses." Apparently the military judge became confused regarding the issue of intoxication. During the instruction conference, the military judge informed trial defense counsel that an instruction on voluntary intoxication would negate appellant's plea to an assault consummated by a battery. This, of course, was incorrect since the offense of assault consummated by a battery is a general intent offense. Even if appellant had pleaded guilty to a specific intent offense, the military judge was still obligated to determine whether the evidence reasonably raised the defense and to instruct if it did. This might ultimately result in revisiting the providence of a plea, but it should not affect the decision as to whether the defense was raised.

8. This should not have come as a surprise to the military judge since the appellant, during the providence inquiry, characterized the incident and his condition in varying terms such as "a drunken mess"; that he was so drunk that he "fell down the stairs" and "couldn't hardly stand up"; that had he been sober he "would never have put myself in a position to get in a fight"; and that he was drunk enough to where "I was not thinking rationally at the time".

jos with everyone else, all the bourbon, scotch, et cetera?

A. Yes, sir.

Q. So were you also just staggering drunk?

A. Yes, sir.

Q. What did you do when you walked out the door?

A. We got up to leave, and I started to go down the steps, and I missed a step and fell down the flight of steps, down to the brick wall.

Record at 91.

 In summary, the testimony before the members indicated that appellant and his co-actors arrived at the bar around 9:00 p.m. and consumed five pitchers or bottles of Mojo and left the bar when it closed at 2:00 a.m. Mojo is a potent mixture of various alcoholic beverages and both appellant and Hecox described themselves as "staggering drunk"; appellant to the point where he fell down a flight of stairs when leaving the bar. There was also testimony that the co-actors knew what they were doing despite their intoxicated state and that they took some very calculated actions in carrying out the scheme which might evidence a conscious state of mind.[9] Nonetheless, where there is "some evidence" to which the members might attach credence, *Watford*, 32 M.J. at 178, any conflict as to whether an accused's mental faculties are so impaired that specific intent cannot be formed must be resolved by the members following a proper instruction by the military judge. We find that there was "some evidence" of excessive drinking and impairment of appellant's faculties to which the members might have attached credence and that the defense of voluntary intoxication was therefore reasonably raised. We hold that the military judge's failure to instruct the members as to this defense was prejudicial error.

With respect to appellant's third assignment of error, we have carefully considered the record of trial and are convinced beyond a reasonable doubt of appellant's guilt of communicating a threat.

Accordingly, the findings of guilty of Charge III (communication of a threat) and its single Specification are affirmed. The findings of guilty of Charges I and II (conspiracy to commit robbery and robbery) are set aside. The sentence is set aside. The case is remanded to the convening authority who may order a rehearing on Charges I and II and a rehearing on the sentence.

Chief Judge WILLEVER and Judge ORR concur.

---

9. Because of this evidence, the members may well have found that appellant was capable of forming the necessary specific intent had the judge properly instructed them.