UNITED STATES

v.

Harry B. MAYHUGH, Jr., 181–62–2611, Boatswain's Mate Third Class (E–4), U.S. Navy.

NMCM 92 01141.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 14 Feb. 1992.

Decided 28 Nov. 1994.

LT Alice B. Lustre, JAGC, USNR, Appellate Defense Counsel.

LT Ralph G. Stiehm, JAGC, USNR, Appellate Government Counsel.

Before LARSON, WELCH and McLAUGHLIN, JJ.

McLAUGHLIN, Judge:

This case was sent to us by order of the Judge Advocate General under Article 69, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 869, to be reviewed under Article 66, UCMJ, 10 U.S.C. § 866.

The appellant is one of three accused who were tried jointly at a general court-martial by officer members. Contrary to their pleas, they were found guilty of conspiracy to commit assault, breach of the peace, and two specifications of assault and battery in violation of Articles 81, 116, and 128, UCMJ, 10

U.S.C. §§ 881, 916, 928. The charges arise out of the foot-pursuit and assault of the victim who had left a civilian bar in New Jersey on his way back to his ship. The victim was kicked and otherwise assaulted by several assailants. The victim had had harsh words at and near the bar with the appellant, his co-conspirators, and others. The appellant was adjudged a sentence to confinement for 6 months, forfeiture of $785.00 pay per month for 6 months, and reduction to pay grade E–1. Although the appellant was not adjudged a punitive discharge, he was adjudged forfeitures greater than those that could be adjudged by a special court-martial, and he is entitled to a verbatim transcript.[1]

The other two accused were adjudged sentences which included, *inter alia,* a punitive discharge, and those cases are before us for factual and legal review under Article 66(c), UCMJ, 10 U.S.C. § 866(c). Among the assignments of error contained in the briefs of the other two accused is that:

## THE MILITARY JUDGE ERRED AS A MATTER OF LAW IN DENYING THE MOTION FOR SEVERANCE.

This same issue was submitted to us by the Judge Advocate General for our review in appellant's case, and the appellant has adopted this issue as his first assignment of error. Because it is the *entire* case that is to be reviewed by under the authority of Article 69, UCMJ, and not just the certified issue, the appellant has submitted 15 other assignments of error. Due to their length and number, the list of those assigned errors are attached as an Appendix. We find merit in Assignment of Error II, and, because of our disposition of that assigned error, Assignment of Error V is moot. The remaining assignments of error are without merit. Assignments of Error I, II, VII, and VIII are further discussed below.

▮ Our review under Article 69, UCMJ, is limited in that "the Court may take action only with respect to matters of law." We do not have the expansive powers granted us by Article 66(c), UCMJ.[2] *See United States v. Parker,* 36 M.J. 269 (C.M.A.1993); *United States v. Claxton,* 32 M.J, 159 (C.M.A.1991); *United States v. Cole,* 31 M.J. 270 (C.M.A. 1990); *United States v. Jones,* 34 M.J. 899, 905 (N.M.C.M.R.1992).

### SEVERANCE

As to the issue sent to us by the Judge Advocate General (Assignment of Error I), we conclude that the military judge did not err as a matter of law in denying the appellant's motion to sever his case from the other joined accused. The military judge did not abuse his discretion in denying the motion, and no actual prejudice resulted from the joint trial.

Rule for Courts–Martial [R.C.M.] 601(e)(3) provides, in part, that: "[a]llegations against two or more accused may be referred for joint trial if the accused are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses...." *See also United States v. Fears,* 11 U.S.C.M.A. 584, 29 C.M.R. 400 (1960).

▮ The discussion under R.C.M. 906(b)(9) indicates that motions for severance are to be liberally considered and granted for good cause shown. If prejudice to an accused would result from a joint trial, the defense motion should be granted. If prejudice would result to the Government, the Government motion should also be granted, rather than more draconian measures such as denying admission of evidence. Notwithstanding the hortatory admonition to the military judge to be liberal in considering a severance motion, we test the military judge's ruling for an abuse of discretion.

---

1. Article 54, UCMJ, provides, in part:
 (c)(1) A complete record of the proceedings and testimony shall be prepared—
 (A) in each general court-martial case in which the sentence adjudged includes ... any other punishment which exceeds that which may otherwise be adjudged by a special court-martial; ...

10 U.S.C. § 854. The Rules for Courts–Martial impose a similar requirement. R.C.M. 1103(b)(2)(B)(i). The appellant's forfeitures are only 70 cents short of all the pay of an E–1 at the time of trial.

2. This limitation is the subject of an assignment of error.

The analysis to R.C.M. 906(b)(9) indicates that the severance provision is derived from the 1969 Manual for Courts–Martial and Federal Rule of Criminal Procedure 14. Manual for Courts–Martial, United States, 1984, App., A21–49. Under the Federal Rule the resolution of a motion to sever is left to the sound discretion of the judge. *United States v. Perkins,* 926 F.2d 1271, 1280 (1st Cir.1991). Denial of a motion to sever will be reversed "only upon the appellant's maintenance of the heavy burden of showing substantial prejudice as a result of joint trial, amounting to a miscarriage of justice." *Id.* In our resolution of the remaining assignments of error, most particularly Assignment of Error VIII, we find no unfair prejudice to the appellant in this joint trial, nor any abuse of discretion by the military judge in denying the severance. We note that, in view of the lenient sentence, the joint trial may have allowed the appellant to reap that "advantage[ ] which sometimes operate[s] to the defendant's benefit" in assessing relative culpability, a recognized benefit for the defendant in a joint trial. *Richardson v. Marsh,* 481 U.S. 200, 210, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987).

■■■ There are *pro forma* circumstances under which the appellant would warrant a separate trial. These circumstances are suggested in the discussions following R.C.M. 812 and 906. They include, in part, when different elections as to forum are made,[3] when a party has a defense antagonistic to another party (i.e., alibi for one and entrapment for the other), when evidence as to any other accused will improperly prejudice the moving accused, and when the moving party wishes to use the testimony of one or more of the coaccused. The use of a confession of one accused that is not admissible against the other accused is not a *pro forma* basis for separate trial. The argument that it should be a basis for severance is directly contra-

dicted in *Richardson v. Marsh,* where the Supreme Court stated:

> It would impair both the efficiency and the fairness of the criminal justice system to require, in all these cases of joint crimes where incriminating statements exist, that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes the trauma) of testifying, and randomly favoring last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability— advantages which sometimes operate to the defendant's benefit.

481 U.S. at 210, 107 S.Ct. at 1709.

Separate considerations pertain to the use of a statement of one accused which is admissible only against some but not all of the accused in a joint trial. *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); Mil.R.Evid. 306, and these considerations are addressed under Assignment of Error VIII.

### VOLUNTARY INTOXICATION: Assignment of Error II

■■■ The military judge instructed the members on voluntary intoxication only as it applied to the specific intent offense of assault *with intent* to inflict grievous bodily harm, and the appellant was convicted of the lesser included offense of assault consummated by a battery. The appellant assigns as error the fact that the military judge did not similarly instruct the members on voluntary intoxication as it related to the conspiracy.[4] The defense counsel did not object to this omission; however, the lack of a defense objection does not waive the *sua sponte* duty on the part of the military judge to instruct

---

3. Although we know of no proscription to the military judge empaneling an officer-member court, an enlisted-member court, and hearing one or more coaccused as a judge-alone court simultaneously under the same convening order number at a single presentation of evidence against all coaccused at a joint trial.

4. Although not a defense, "evidence of any degree of voluntary intoxication may be introduced for the purpose of raising a reasonable doubt as to the existence of actual knowledge [or] specific intent ... if actual knowledge [or] intent ... is an element of the offense." R.C.M. 916(*l*)(2); *see United States v. Yandle,* 34 M.J. 890 (N.M.C.M.R.1992).

on voluntary intoxication when required by the evidence. *United States v. Yandle*, 34 M.J. 890, 892 (N.M.C.M.R.1992) (citing *United States v. Watford*, 32 M.J. 176 (C.M.A. 1991)). *Watford* involved a conviction of premeditated murder: *Yandle* involved a conviction of conspiracy to rob and robbery. Notwithstanding the fact that the pertinent case law involving voluntary intoxication as it relates to the military judge's *sua sponte* obligation to instruct members in conspiracy cases concerns conspiracies to commit specific intent crimes, criminal conspiracy itself is a specific intent crime. "Conspiracy is one of the crimes requiring so-called 'specific intent.'" Rollin M. Perkins & Ronald N. Boyce, Criminal Law, ch. 6, § 5 at 697 (3d ed. 1982). In *United States v. Mukes* the Court of Military Appeals stated:

> When the trial court is dealing with the crime of conspiracy, it must ascertain that the evidence introduced shows the accused possessed deliberate, knowing, and specific intent to join the conspiracy, not merely that he was associated with persons who were part of the conspiracy or that he was merely present when the crime was committed.

18 M.J. 358, 359 (C.M.A.1984) (citation omitted). It is clear from the above that a level of cognition is required to knowingly join in a criminal conspiratorial agreement. This cognitive element is akin to those which may be affected, and even negated, by voluntary intoxication. *See* R.C.M. 916(*l*)(2).

Since the military judge concluded that the issue of voluntary intoxication was raised by the evidence, his failure to instruct on voluntary intoxication as it applied to the conspiracy charge was prejudicial error.

*SUPPRESSION: Assignment of Error VII*

■ At a preliminary evidentiary hearing conducted pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a), the appellant made a motion to suppress his confession/admission which was denied. The procedure is governed by Mil.R.Evid. 304. *United States v. Jones*, 34 M.J. 899, 903 (N.M.C.M.R.1992). The military judge should have ruled on the motion *before* the pleas and he had a *sua sponte* obligation to render appropriate essential findings. Mil.R.Evid. 304(d)(4);

*Jones*, 34 M.J. at 903; *United States v. Postle*, 20 M.J. 632 (N.M.C.M.R.1985); *see also United States v. Watts*, 21 M.J. 728 (N.M.C.M.R.1985). Unfortunately, the military judge kept putting off the resolution of the issue, but the appellant has not cited this delay as error and we find none. Mil.R.Evid. 304(d)(4). As if to spotlight this failure to rule before arraignment, the military judge made no ruling on the record resolving the motion.

In an affidavit filed with this Court and attached to the record, one of the three defense counsel at this joint trial states that after the military judge had reserved a hearing and ruling on the motion until later in trial, he ruled at an off-the-record session under R.C.M. 802 to deny the suppression motion. The affidavit states, in part:

> 4. During an R.C.M. 802 session later in the trial, the military judge advised us that he was denying our motion to suppress the statements. It was clear at that time that the motion was denied although it appears that this was never put on the record.
>
> 5. Our (LT Barth, LT Mahoney and myself) tactics with regard to the cross-examination of Detective Cerame were based upon the judge's ruling in the 802 session.

Affidavit of LT D.W. Molhem, JAGC, USNR.

With the aid of the defense counsel's affidavit, we can determine from this record that the military judge denied the motion *in limine* to suppress, and that the Government met its burden at trial to show by a preponderance of evidence that the statement was not taken in violation of the appellant's 5th Amendment rights and Article 31(b), 10 U.S.C.A. § 831(b). U.S. Const. amend. V; Mil.R.Evid. 304 and 305.

The case law is replete, and will not be repeated here, with admonitions to trial judges to ensure that essential findings are included in the record when required by the Rules of Evidence and the Rules for Courts-Martial. Our review, here limited to matters of law, is similar to our review of government appeals under Article 62(b), UCMJ, 10 U.S.C. § 862; R.C.M. 908(c)(2), and essential findings of fact are crucial, as we do not have the fact-finding powers that we possess when

conducting review under Article 66, UCMJ. *United States v. Reinecke,* 30 M.J. 1010 (A.F.C.M.R.1990), *rev'd on other grounds sub nom. United States v. Strozier,* 31 M.J. 283 (C.M.A.1990).

Our method for resolution of the suppression issue, notwithstanding the military judge's omission, can take several forms and arises from case law that has grappled with the failure of a judge to correctly perform his duties regarding essential findings, without distinction as to what Military Rule of Evidence or Rule for Courts–Martial required the judge to enter essential findings. In launching a rescue mission, we can comb the record, and the judge's pronouncements therein, to determine what uncontroverted facts exist and what legal standards were applied. *United States v. Ruhling,* 28 M.J. 586, 592 (N.M.C.M.R.1988); *Postle,* 20 M.J. at 642–43. *see Reinecke,* 30 M.J. at 1015.

A. *Article 31(b), UCMJ; R.C.M. 305*

A New Jersey township civilian detective came to the ship to investigate the assault. He interviewed the appellant on board the ship. Present at or "around" the interview area were another New Jersey township civilian detective, a Navy lieutenant, a Navy security patrolman, and a Navy legalman. Record at 251.

 Civilian law enforcement officials are not required to advise a military member of his rights under Article 31 and Mil.R.Evid. 305(c) unless they are "acting as a knowing agent of a military unit or of a person subject to the code." Mil.R.Evid. 305(b)(1); *see also United States v. Oakley,* 33 M.J. 27, 31 (C.M.A.1991); *United States v. Penn,* 18 U.S.C.M.A. 194, 39 C.M.R. 194 (1969). The civilian policeman who questioned the appellant was clearly operating on his own agenda, for his own jurisdiction's purposes, and was not an agent or strawman for the military personnel present. Record at 252–53. Additionally, once the civilian detective determined, through his brief questioning, that the

incident was an "in house" Navy problem and of little interest to his township, he discontinued involvement in the case and there was no merger of the civilian and military investigations. *United States v. Moreno,* 36 M.J. 107, 113 (C.M.A.1992). Finally, the civilian detective testified that he informed the appellant of what he was suspected of and gave him his "*Miranda*" warnings.[5] *Id.* It would appear that the appellant was unwittingly advised of all the information required by Article 31(b), UCMJ, warnings by the civilian detective.

B. *Mil.R.Evid. 304*

From the uncontroverted testimony, we are convinced that the military judge did not err when he denied the motion to suppress the statements made by the appellant which were introduced at trial. The record contains ample proof to determine by a preponderance of the evidence that the statements were made voluntarily. Mil.R.Evid. 304(e)(1).

*ADMISSIONS OF COACCUSED: Assignment of Error VIII*

 In structuring the admission of each accused's incriminating statement, the military judge correctly limited the civilian detective's testimony to what each accused admitted about himself. The military judge did not allow the statements of the coaccused into evidence in any greater scope or under any other theory.[6] By so ruling, the military judge ensured that all direct, implied, or contextual references to the coaccused were purged. *Richardson v. Marsh;* Mil.R.Evid. 316. Thereafter, the civilian detective took the stand and testified as to what the appellant had admitted to doing concerning the allegations. The pertinent portion of the testimony was:

Q. What, if anything, did Mayhugh tell you that he, himself, did?

A. He stated that he had struck the victim several times with his fists.

---

5. Which would include, in part, the right to remain silent and the warning that anything said could be used against the appellant in court. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

6. The prosecutor had advocated admitting the statements in their entirety under Mil.R.Evid. 804(b)(3) as a statements against the unavailable declarant's interest, but the military judge denied admission on that basis. Record at 246.

Record at 278. More importantly to the issue, the detective was identically limited in testifying about the statements made by the coaccused. After the tightly limited portion of each coaccused's admission/confession was presented, that coaccused's lawyer was given cross-examination opportunity, but not the other coaccused's counsel. Before this testimony, the military judge instructed the members that something unique was occurring. The military judge stated to the members:

> MJ: Let me explain to the members what we're going to do. The trial counsel is going to [ask] Detective Cerame certain questions and then I'm going to let counsel, [who] those questions pertain to, have a cross-examination, and we'll proceed like that. It may be a little—appear to be a little disjointed, but I think in the long run, it will be easier for the members to—for them, in their evaluation of taking of evidence.

Record at 273. At the conclusion of this method of testimony, the military judge further instructed the members that:

> MJ: Okay. Members, I want to just discuss with you for a moment, earlier in this trial, when I told you that this [was] going to be a joint trial and that there were three accused in this case, I said that you would have to be convinced of the evidence against each accused. I want to repeat that instruction that I gave to you earlier, and we need to constantly keep this in mind.
>
> Each of these accused are [sic] charged jointly with committing the same offenses. You must consider the guilt or innocence of each accused separately. The guilt or innocence of any one accused must not influence your findings as to the other accused. So, you have to find beyond a reasonable doubt—and I'll tell you when it comes time for your finding, as to each accused, and you can't impute the evidence to the other, in other words, is what I'm saying.

Record at 298. Additionally, in his final instructions, which were provided to the members in writing after having been given orally, the military judge stated:

> As I've previously instructed you on several occasions in this case, the accused in this case are charged with jointly committing the same offenses. You must consider the guilt or innocence of each accused separately. The guilt or innocence of any one accused must not influence your findings as to any of the other accused.

Record at 353.

We find that the limiting instructions given, applied to the method used to elicit the tightly limited statements of the coaccused, were adequate to prevent a violation of the Confrontation Clause rights of the appellant. U.S. Const. amend. VI; *Richardson v. Marsh* (holding that admission of properly redacted, non-testifying codefendant's confession is not violative of Confrontation Clause when accompanied by proper limiting instruction).

Accordingly, the findings of guilty of Charge I (conspiracy to assault) and its single specification are set aside and, in the interest of judicial economy, dismissed. The findings of guilty of Charges II and III (breach of peace and assault) are affirmed. We will reassess the sentence. *United States v. Jones*, 39 M.J. 315 (C.M.A.1994); *United States v. Peoples*, 29 M.J. 426 (C.M.A. 1990); *United States v. Sales*, 22 M.J. 305 (C.M.A.1986). Only so much of the sentence that provides for confinement of 6 months, reduction to pay grade E–1, and forfeitures of $500.00 pay per month for 6 months is approved.

Chief Judge LARSON and Senior Judge WELCH concur.

## APPENDIX

I. WHETHER THE MILITARY JUDGE ERRED AS A MATTER OF LAW IN DENYING THE MOTION FOR SEVERANCE.

II. THE MILITARY JUDGE ERRED BY FAILING TO INSTRUCT ON THE DEFENSE OF VOLUNTARY INTOXICATION AS IT APPLIED TO THE CHARGE OF CONSPIRACY.

III. APPELLANT WAS DENIED HIS RIGHT TO A SPEEDY TRIAL OF THE CHARGES AGAINST HIM.

IV. THE PROVISIONS OF UCMJ ARTICLE 69(e) LIMITING THIS COURT'S REVIEW TO MATTERS OF LAW VIOLATE APPELLANT'S DUE PROCESS RIGHTS IN THAT IT UNFAIRLY LIMITS APPELLANT'S RIGHT AS COMPARED TO THOSE OF HIS COACCUSED.

V. THE GOVERNMENT FAILED TO PROVE THE EXISTENCE OF A CONSPIRACY BEYOND A REASONABLE DOUBT.

VI. THE RECORD OF TRIAL IS INCOMPLETE WHERE IT DOES NOT CONTAIN THE MILITARY JUDGE'S RULING ON APPELLANT'S MOTION TO SUPPRESS HIS CONFESSION.

VII. THE MILITARY JUDGE ERRED IN DENYING APPELLANT'S MOTION IN LIMINE TO SUPPRESS STATEMENTS MADE TO DETECTIVE CERAME WHEN THEY WERE MADE UNDER CONDITIONS WHICH NEGATED THEIR VOLUNTARINESS AND RELIABILITY, AND APPELLANT WAS NOT GIVEN HIS ARTICLE 31(b) RIGHTS.

VIII. THE MILITARY JUDGE ERRED BY FAILING TO GIVE THE MEMBERS A PROPER LIMITING INSTRUCTION AFTER THE GOVERNMENT WITNESS TESTIFIED ABOUT CONFESSIONS MADE BY THE COACCUSED.

IX. THE CONVENING AUTHORITY TOOK ACTION ON ERRONEOUS INFORMATION, BECAUSE THE STAFF JUDGE ADVOCATE'S RECOMMENDATION FAILED TO INDICATE THAT THE MEMBERS CONSIDERED CHARGE II MULTIPLICIOUS FOR SENTENCING WITH CHARGE III, SPECIFICATION 1, THEREBY REDUCING THE MAXIMUM POSSIBLE CONFINEMENT BY 25 PERCENT. (CITATIONS OMITTED.)

X. THE RECORD OF TRIAL FAILS TO ESTABLISH THAT THE MILITARY JUDGE WAS PROPERLY QUALIFIED IN ACCORDANCE WITH UCMJ ARTICLE 26(c).

XI. THE MILITARY JUDGE FAILED TO ADEQUATELY EXPLAIN THE FORUM CHOICES TO APPELLANT WHERE HE DID NOT STATE THAT ENLISTED MEMBERS WOULD BE FROM ANOTHER UNIT OR EXPLAIN THE VOTING PROCEDURES.

XII. THE JUDGE ADVOCATE GENERAL OF THE NAVY'S PREPARATION OF NAVY–MARINE CORPS COURT OF MILITARY REVIEW JUDGES' FITNESS REPORTS VIOLATES PETITIONER'S [sic] RIGHT TO AN IMPARTIAL JUDICIAL FORUM.

XIII. THE COURT–MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS NOT APPOINTED TO A FIXED TERM OF OFFICE. (CITATION OMITTED.)

XIV. THE COURT–MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION. (CITATION OMITTED.)

XV. THIS COURT DOES NOT HAVE POWER TO REVIEW THIS CASE BECAUSE ITS JUDGES ARE NOT APPOINTED TO A FIXED TERM OF OFFICE. (CITATION OMITTED.)

XVI. THIS COURT HAS NO POWER TO REVIEW THIS CASE BECAUSE ITS JUDGES ARE DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION. (CITATION OMITTED.)