UNITED STATES, Appellee

v.

Harry B. MAYHUGH, Jr., Boatswain's
Mate Third Class U.S. Navy,
Appellant.

UNITED STATES, Appellee

v.

William W. WIGGINGTON, Seaman
Apprentice U.S. Navy,
Appellant.

Nos. 95–0602, 95 0507.
Crim.App. Nos. 92–1141, 92 1115.

U.S. Court of Appeals for
the Armed Forces.

Argued March 26, 1996.

Decided Aug. 30, 1996.

*Counsel (Mayhugh)*

For Appellant: *Lieutenant Syed N. Ahmad,* JAGC, USNR (argued); *Major David S. Jonas,* USMC (on brief); *Lieutenant D. Jacques Smith,* JAGC, USNR, and *Lieutenant Steven B. Fillman,* JAGC, USNR.

For Appellee: *Lieutenant Jonathan W. Haray,* JAGC, USNR (argued); *Colonel Charles Wm. Dorman,* USMC, and *Commander D.H. Myers,* JAGC, USN (on brief); *Colonel J. Composto,* USMC, and *Major Laura L. Scudder,* USMC.

*Counsel (Wiggington)*

For Appellant: *Lieutenant Kathryn L. Clune,* JAGC, USNR (argued).

For Appellee: *Major Michael K. Lambert,* USMC (argued); *Colonel Charles Wm. Dorman,* USMC, *Commander D.H. Myers,* JAGC, USN, *Major Stephen P. Finn,* USMC (on brief); *Colonel J. Composto,* USMC and *Major Albert Diaz,* USMC.

*Opinion of the Court*

CRAWFORD, Judge:

This was a joint trial by a general court-martial panel of officers and enlisted mem-

bers[1] at Naval Base, Philadelphia, involving three accused.[2]

Contrary to his pleas, Harry Mayhugh was convicted of conspiracy to commit an assault, breach of the peace, and assault and battery (2 specifications), in contravention of Articles 81, 116, and 128, Uniform Code of Military Justice, 10 USC §§ 881, 916, and 928, respectively. The convening authority approved Mayhugh's sentence of confinement and partial forfeitures for 6 months and reduction to the lowest enlisted grade.

Contrary to his pleas, William Wiggington was convicted of the same offenses as Mayhugh. The convening authority approved his sentence of a bad-conduct discharge, confinement and partial forfeitures for 9 months, and a reduction to the lowest enlisted grade.

On review under Article 69, UCMJ, 10 USC § 869, in Mayhugh's case, the Court of Criminal Appeals dismissed Charge I (conspiracy to assault) "in the interest of judicial economy" but affirmed in all other respects except for a reduction in forfeitures. 41 MJ 657, 663 (1994). That court reached the same result under Article 66, UCMJ, 10 USC § 866, as to Wiggington in an unpublished opinion.

We granted review of substantially the same issue in each case as follows:

WHETHER THE NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS ERRED WHEN THEY FAILED TO RECONSIDER THE ISSUE OF JOINDER WHEN THE CONSPIRACY CHARGE WAS SET ASIDE.

We hold that the court below did not err in failing to reconsider the issue of improper joinder after it dismissed the conspiracy charge.

## FACTS

This case involves an incident on May 22, 1991, when two different groups of sailors went to a local civilian bar and began name-calling and nudging each other. *See generally* Answer to Final Brief at 2–5. After departing work, Mess Management Specialist Second Class Christopher Anderson went to the Gundeck, an enlisted club at the Naval Weapons Station, Earle, New Jersey. At the club he met Seamen Apprentice [SA] Eugene Fiebelkorn, Petty Officer Dorothy Howell, and Boiler Technician Third Class Lisa Martin. They played pinball and video games, watched others play pool, and then watched television. When the Gundeck closed, the group decided to go to Murphy's Depot Inn, a bar outside the base.

After arriving at the Depot Inn, Christopher Anderson obtained a drink and then played a pinball game and watched Martin play pool. SA Fiebelkorn, who was also at the Depot, noticed Wiggington was present with five other enlisted sailors—Matta, Kevin M. Anderson (one of the accused), Mayhugh, Wardell, and Breedlove. K.M. Anderson approached Martin and made a disgusting comment to her. Christopher Anderson intervened and told K.M. Anderson "to leave her alone." When K.M. Anderson continued to harass Martin, Fiebelkorn intervened and defused the situation. K.M. Anderson stopped harassing Martin but later bumped Christopher Anderson on his way to the restroom. K.M. Anderson and his companions including Wiggington continued to call Christopher Anderson and Fiebelkorn various unflattering "names."

Christopher Anderson and his group left the Depot after last call for drinks. Wiggington and his group, which now included Evans, Fountain, Matta, Breedlove, Mayhugh, and K.M. Anderson, followed them. On the way back to base Christopher Anderson was chased by K.M. Anderson, Matta, Mayhugh, Breedlove, Evans, and

---

1. The opinion below in both cases erroneously only says "officer members."

2. The third accused was Seaman Apprentice Kevin M. Anderson. He was convicted of the same offenses as the accused presently before us and was sentenced to a bad-conduct discharge, confinement for 6 months, partial forfeitures, and reduction to E–1. This sentence was approved by the convening authority. In an unpublished opinion dated November 16, 1994, the court below dismissed the conspiracy offense and affirmed the sentence except for forfeitures. Anderson did not file a petition for grant of review in this Court.

Wiggington. Soon he was grabbed by K.M. Anderson, who led him towards Mayhugh. After being hit by K.M. Anderson and having his glasses knocked off, Christopher Anderson fled for his own safety. Christopher Anderson was able to escape back into the Depot.

Believing his aggressors had dispersed, he again headed back to the base by an alternate route. However, to his surprise, he was again assailed and forced to kneel down when one of his attackers urinated on him. Because it was dark, he was unable to identify the individuals.

Thereafter, Christopher Anderson had a third encounter with a number of individuals on his way back to the base. Despite attempting to hide in the tall grass, Christopher Anderson was again attacked. The next thing he remembered was waking up along side the road, his glasses broken and his face swollen and sticky.

Fiebelkorn testified that when he and Christopher Anderson originally were followed as they left the Depot, the group consisted of Wiggington, Matta, K.M. Anderson, Mayhugh, and Breedlove. This time he was chased by Matta, Wiggington, and Breedlove but was basically left alone. The others went after Christopher Anderson.

On the second encounter with these five, Fiebelkorn fled in a different direction followed by Matta and Breedlove, leaving the other three with Christopher Anderson.

After the crime was reported, Detective Sergeant Michael Cerame, a civilian police investigator, interviewed Mayhugh, Wiggington, and K.M. Anderson. Each admitted having assaulted Christopher Anderson. K.M. Anderson specifically told the investigator "he had struck the victim with his closed fist, and" at another point he held "the victim by the collar." During his interview, Wiggington admitted urinating on Christopher Anderson and later, when Christopher Anderson was on the ground, kicking him in the ribs.

At a session under Article 39(a), UCMJ, 10 USC § 839(a), Detective Cerame testified that K.M. Anderson said he was involved with two incidents at the Depot Inn, one inside and one outside, and K.M. Anderson "struck" Christopher Anderson "with his hands" and "held the victim" down "at one point."

On cross-examination before the members, Detective Cerame indicated there was no evidence of a "planned attack." On redirect he defined a planned attack as follows: "Where the actors ... the defendants ... get together and plan that they are going to take a certain action towards another individual ... in the commission of crime...." He also testified that at any one time there were no more than eleven people involved.

A motion to sever was made at a pretrial session under RCM 802, Manual for Courts-Martial, United States (1995 ed.). At the opening Article 39(a) session, the judge asked the three defense counsel for argument on the motion, stating:

> Let me tell you what I am looking for in the severance motion. I'm looking for evidence which will show or establish the factual basis of prejudice to your client.... So what I want to know is how will your client be prejudiced if I fail to sever him from his [sic] case. I'm looking for facts and evidence in that regard; in that matter. Do you understand that? That's the evidence that you need to bring out for me. How will your client be prejudiced?

Lieutenant (LT) Barth, for appellant Mayhugh, argued that one of the prejudicial factors under the Motion for Severance would be the "potential problems with a Detective Cerame testifying about what one of the co-accused may have said about another co-accused." The judge asked the prosecution how she would handle Detective Cerame's testimony, and she stated that she did not plan on having him testify as to what one co-accused may have said about another co-accused, unless specifically authorized by the judge to do so. Another concern seemed to be whether co-accused's counsel would be allowed to comment on another accused's failure to testify. The judge assured counsel that he would not allow that to happen.

The judge denied the motion to sever. In his ruling he noted that the accused had been charged with the same offenses; that the same witnesses would be called; that there were no antagonistic defenses; that no one intended to call their co-accused; and that the possibility of prejudice was no more than "speculative" at that time.

The judge also instructed the members that they "must consider the guilt or innocence of each accused separately" and that the "guilt or innocence of any one accused must not influence" their "findings as to any of the other accused."

■ On appeal the defense argues that, because the conspiracy charge initially justified the joinder, the issue of joinder should have been reconsidered by the court below when it dismissed the conspiracy charge. *See Schaffer v. United States,* 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed.2d 921 (1960)(conspiracy failure a factor to be considered in determining prejudice). They contend that the court below erred by failing to test for prejudice when the conspiracy charge was set aside. Finally, the defense asks this Court to remand the case to the court below with instructions to reconsider the issue of improper joinder.

The Government argues this is an issue of law for the court below to consider *de novo.* That court was not required to examine further the joinder of appellant's trial because the dismissal of the conspiracy charge herein was a result of an instructional error at trial (41 MJ at 661), not a result of insufficient evidence (362 U.S. at 516, 80 S.Ct. at 948) as was the case in *Schaffer.* Here the military judge failed to instruct the members that appellant's voluntary intoxication might negate the "cognitive element" required for the offense of conspiracy. 41 MJ at 660–61. Further, the court below concluded that the conspiracy charge was not even necessary for a proper joinder of cases under RCM 601(e)(3).

Even assuming, *arguendo,* that the conspiracy charge was the basis of the joinder, the Government argues that appellant has not shown prejudice from the military judge's denial of the motion to sever. The court below specifically found that "no actual prejudice resulted from the joint trial." 41 MJ at 659.

## DISCUSSION

■ Rules of evidence and rules of criminal procedure normally determine joinder and severance of defendants. However, as in this case, there must be a joinder before there is a motion to sever. RCM 601(e)(3) provides:

> *Joinder of accused.* Allegations against two or more accused may be referred for joint trial if the accused are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such accused may be charged in one or more specifications together or separately, and every accused need not be charged in each specification.

"The first two sentences" of this Rule for Courts–Martial "restate Fed.R.Crim.P. 8(b)[3] in military nomenclature." RCM 601(e)(3), Drafters' Analysis, Manual, *supra* at A21–30 (1995 ed.).

The discussion to RCM 601(e)(3) discourages joint trials of multiple offenders because of "procedural and evidentiary" complications. Additionally, Mil.R.Evid. 306, Manual, *supra* (1995 ed.), complicates trials of joint offenders. RCM 906(b)(9) provides for a motion for

> [s]everance of multiple accused, if it appears that an accused or the Government is prejudiced by a joint or common trial. In a common trial, a severance shall be granted whenever any accused, other than the moving accused, faces charges unrelated to those charged against the moving accused.

---

**3.** Fed.R.Crim.P. 8(b) provides:

*Joinder of Defendants.* Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in

the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

The discussion to this RCM states that in a common trial a motion for severance should be "liberally" granted upon a showing of good cause including when: "the moving party wishes to use the testimony of one or more of the coaccused ...; a defense of a coaccused is antagonistic to the moving party; or evidence as to any other accused will improperly prejudice the moving accused."

RCM 906(b)(9) "is based on ... Fed. R.Crim.P. 14[4] to the extent that the latter applies to severance of codefendants." RCM 906(b)(9), Drafters' Analysis, Manual, *supra* at A21–53 (1995 ed.).

■ The federal courts, construing Fed. R.Crim.P. 14, have uniformly held that the standard of review for evaluating a ruling on a severance motion is abuse of discretion. *See, e.g., United States v. Lane,* 474 U.S. 438, 449 n. 12, 106 S.Ct. 725, 732 n. 12, 88 L.Ed.2d 814 (1986); *United States v. Davidson,* 936 F.2d 856, 861 (6th Cir.1991). Here the issue is whether the court below erred in failing to reconsider the question of improper joinder. Our standard of review is whether the decision of the court below is correct as a matter of law. *See* S. Childress and M. Davis, 2 *Federal Standards of Review* § 7.05 at 7–26 (2d ed. 1992).

In *Zafiro v. United States,* 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), the Supreme Court refused to adopt a bright-line rule that would mandate severance when codefendants have conflicting defenses. The Court stated:

> We believe that, when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence....

506 U.S. at 539, 113 S.Ct. at 938; *see also United States v. Lane,* 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986).

In *Schaffer v. United States,* 362 U.S. at 513, 516, 80 S.Ct. at 946, 948, the Court held (5–4) that there was no improper joinder even though the conspiracy charge that formed the basis for linking all the defendants together was dismissed by the trial judge for insufficient evidence. The ultimate question was whether the defendants were prejudiced by the joinder of offenders. *Id.* at 514, 80 S.Ct. at 947.

Although *Schaffer* is helpful in instructing courts to consider whether defendants have been prejudiced by their joinder, the defense's complete reliance on *Schaffer* is misplaced. *Schaffer* can be distinguished on several grounds. First, it involved the joinder of several offenders whose crimes were similar but unrelated to each other, whereas here the offenses charged were identical. Second, in *Schaffer* the Court determined that the defendants "were engaged in a series of transactions" unrelated in time or place, 362 U.S. at 517–18, 80 S.Ct. at 948–49, as opposed to this case where the crimes occurred at substantially the same time and geographical location. Finally, dismissal of the conspiracy charge in *Schaffer* was the result of insufficient evidence, but here that dismissal was the result of an instructional error at trial.

The facts in *Schaffer* reveal that in Count 1, the two Schaffers and the three Stracuzzas were charged with illegally transporting stolen wearing apparel from New York to Pennsylvania. In Count 2, Marco and the Stracuzzas were charged "with a similar movement of stolen" apparel from New York to West Virginia. Count 3 charged Karp and the Stracuzzas with shipments of stolen apparel from New York to Massachusetts. Additionally, all of the defendants were charged "with a conspiracy to commit the

---

4. Fed.R.Crim.P. 14 provides:

   If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

substantive offenses." 362 U.S. at 513, 80 S.Ct. at 946. Two of the Stracuzzas pleaded guilty and the charges against the third Stracuzza was disposed of before trial. The remaining defendants "pleaded not guilty and were tried simultaneously in a single trial," with one of the Stracuzzas appearing as the key prosecution witness. *Id.* at 519, 80 S.Ct. at 949 (footnote omitted).

At the close of the Government's case on a defense motion, the trial "court dismissed the conspiracy count for failure of proof." *Id.* at 513, 80 S.Ct. at 946. Despite "objection the court continued the joint trial on the remaining substantive counts." *Id.* at 519, 80 S.Ct. at 949. The Supreme Court held that there was no improper joinder of defendants. *Id.* at 513, 80 S.Ct. at 946.

The Supreme Court cited Fed.R.Crim.P. 8(b), concerning joinder of offenders, and the severance rule—Fed.R.Crim.P. 14. It rejected the defendants' arguments that they were prejudiced by continuation of the joint trial. 362 U.S. at 514–16, 80 S.Ct. at 947–48. "[T]he judge was acutely aware of the possibility of prejudice and was strict in his charge—not only as to the testimony the jury was not to consider, but also as to that evidence which was available in the consideration of the guilt of each petitioner...." *Id.* at 516, 80 S.Ct. at 948.

As opposed to a lack of a unifying force in *Schaffer,* a common thread that runs through these charges is that the group composed of the defendants decided to attack Christopher Anderson and his group because of Anderson's intervention on behalf of the enlisted woman at the club.

There is no evidence that the Government acted in bad faith in joining the defendants. *See, e.g., United States v. Luna,* 585 F.2d 1 (1st Cir.1978). In fact, there is not even an inference of bad faith. *See, e.g., United States v. Velasquez,* 772 F.2d 1348 (7th Cir. 1985).

When the military judge ruled on the severance motion, he noted that all the co-accused were faced with the same charges; that the same witnesses were to be called to prove those charges; that there were no antagonistic defenses; and that there was no intention by any party to call a co-accused. Even without the conspiracy charge, joinder of the co-accused in this case would have been permissible. It is clear that the judge was particularly sensitive to the exhortations found in RCM 601(e)(3) and RCM 906(b)(9) discouraging joint trials that would involve unrelated charges or procedural and evidentiary complications.

The military judge also ensured that there were no interlocking statements or a statement by one defendant that incriminated another. The judge's caution secured compliance with Mil.R.Evid. 306. To guarantee that the Fifth Amendment right to remain silent of all the accused was not compromised, the judge assured that one defendant would not be allowed to comment on another accused's failure to testify. In addition, the judge admonished the jury several times that they must consider the evidence individually, as it applied to each co-accused, and not to let the guilt or innocence of one accused influence their judgment as to another accused. *See, e.g., United States v. Lane,* 474 U.S. at 451 n. 13, 106 S.Ct. at 733 n. 13. These precautions prevented any "spill-over" effect and ensured a fair trial for each accused. We agree with the Court of Criminal Appeals' finding that "no actual prejudice resulted from the joint trial." 41 MJ at 659.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Chief Judge COX, Judges SULLIVAN and GIERKE, and Senior Judge EVERETT concur.